IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

T&M INVENTIONS LLC,

                Plaintiff,

v.

BLUESCOPE BUILDINGS NORTH AMERICA, INC.,

                Defendant.

OPINION and ORDER

19-cv-711-jdp

---

    This breach-of-contract case arises from a dispute over the royalty provisions in a patent license. Plaintiff T&M Inventions LLC licensed its skylight-mounting system to defendant BlueScope Buildings North America, Inc. Two years in, the parties renegotiated the method of calculating the royalty. The amended agreement also included a provision requiring the parties to discuss, annually, whether the royalty should be adjusted. T&M thinks that it is entitled to a royalty increase, and it has sued BlueScope for breach of the provision requiring good-faith discussions of adjustments to the royalty. Dkt. 6.

    BlueScope moves for summary judgment, contending that the provision on which T&M relies is unenforceable as a mere promise to engage in future negotiations. Dkt. 50. The court agrees, and it will grant BlueScope's motion for summary judgment and close this case. Because the court resolves the case on the merits, BlueScope's motions to strike T&M's proffered expert testimony and supplemental discovery responses, Dkt. 75 and Dkt. 89, are denied as moot.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

Plaintiff T&M is an LLC comprised of two members: Michael McLain, a Wisconsin citizen, and Timothy Pendley, a California citizen. T&M owns patents for a system, invented by McLain and Pendley, for mounting skylights on the roofs of metal buildings. Defendant BlueScope, a Delaware corporation with its principal place of business in Missouri, designs and sells low-rise metal buildings.

In 2011, T&M granted BlueScope an exclusive license under its skylight-mounting system patents. BlueScope was to pay a two-part royalty calculated by adding: (1) a percentage of the cost of the lenses in skylights that used T&M's system; and (2) a percentage of BlueScope's gross revenue from the sale of those skylights.

In 2013, BlueScope asked T&M to renegotiate the royalty to simplify the calculation. T&M agreed, and the parties negotiated for about five months, with both parties represented by counsel. The parties entered into an amended agreement in August 2013. Under the amended agreement, the two-part percentage-based royalty was replaced by a simple per-unit royalty for sales in the United States and Canada. For products installed outside the United States and Canada, royalties would be calculated as under the 2011 agreement for a six-month interim period, after which those sales would also be subject to the per-unit royalty.

The current dispute involves a provision in which the parties agreed to discuss future royalty adjustments. Section 3.8 of the 2013 agreement states:

> Every year on or about the Renewal Date, the Parties will discuss in good faith the Royalty amount and whether any adjustment should be made due to changes to the market for the Products or the cost of manufacturing or procuring the Products.

Dkt. 31, at 3. Although section 3.8 said that the parties would discuss a royalty adjustment each year, T&M did not request such a discussion until late 2016. The parties met in January 2017 and again in July 2018. In both meetings, T&M asked BlueScope to increase its royalty

payments to match what BlueScope would have paid under the percentage-based terms of the 2011 agreement. BlueScope did not agree.

In March 2019, T&M wrote to BlueScope, accusing it of breaching its promise to discuss the royalty in good faith. The parties continued to discuss the issue through the summer of 2019, after which BlueScope offered to increase the royalty amount for some of the products it sold. T&M rejected this offer and did not make a counteroffer, instead filing this lawsuit for breach of contract.

This court has jurisdiction over the case under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is more than $75,000.

ANALYSIS

T&M asserts a single claim against BlueScope, for breach of contract. Dkt. 6, ¶¶ 48–51. Specifically, T&M contends that BlueScope breached section 3.8 of the 2013 agreement, which required the parties to discuss in good faith whether any adjustment should be made to the royalty. The agreement states that it is governed by Missouri law. Dkt. 58, at 8. Both parties rely on Missouri law, and the court will do the same.

BlueScope contends that section 3.8 cannot support a breach-of-contract claim because it is merely an unenforceable promise to engage in future negotiations. Under Missouri law, contracting parties may reserve some matters for future agreement without automatically voiding the entire contract. *Lunsford v. Deatherage*, 518 S.W.3d 890, 895 (Mo. Ct. App. 2017). "The essential terms of unperformed promises must be stated; details or particulars need not." *Shellabarger v. Shellabarger*, 317 S.W.3d 77, 82 (Mo. Ct. App. 2010) (internal quotations omitted). Whether a contract is enforceable is a matter of contract interpretation, a question

of law for the court. *See Woodson v. Bank of Am., N.A.*, — S.W. 3d —, 2020 WL 2844236, at *3–*4 (Mo. Ct. App. June 2, 2020).

A court cannot enforce an "illusory promise," which is "a promise to engage in behavior of an indefinite sort." *Schell v. LifeMark Hosps. of Mo.*, 92 S.W.3d 222, 229 (Mo. Ct. App. 2002). A promise is illusory if the court (1) cannot determine whether the parties have complied with their obligations; or (2) cannot reasonably determine damages. *Id.* The mutual promise contained in section 3.8 to discuss the royalty each year is just such an illusory promise because the court has no way to reasonably determine T&M's damages, which is the only remedy T&M seeks. Section 3.8 requires the parties to discuss adjustments to the royalty amount based on two factors: (1) "the market for the Products" and (2) "the cost of manufacturing or procuring the Products." Dkt. 31, at 3. These would be reasonable considerations in a royalty negotiation, but it's not at all clear how the parties are supposed to adjust the royalty rate based on them.

T&M contends that section 3.8 is not merely a promise to engage in future negotiations but rather "a mechanism for annually adjusting the Royalty." Dkt. 107, at 11–12. T&M contends that the court can determine damages by calculating the difference between the royalty that BlueScope paid under the 2013 formula and the royalty that BlueScope would have paid if the 2011 formula had remained in effect. In T&M's view, section 3.8 required the parties to determine each year what per-unit royalty would yield the same royalty as the 2011 formula, then adjust the royalty accordingly. T&M says that the interim royalty on foreign sales shows that the purpose of the annual discussion was to true-up the per-unit royalty to produce the same result as the original percentage-based royalty.

If that had been the intent of the amended agreement, it would have been simple to say so. But that's just not what the agreement says. Under the plain language of the 2013

4

agreement, the parties replaced the 2011 royalty formula with a per-unit royalty. They agreed to discuss future adjustments, but they did not commit to make any.

T&M cites extrinsic evidence that it contends shows that the parties' intent was to simplify BlueScope's royalty calculations without changing T&M's royalty revenue. It relies on statements by BlueScope representatives during the 2013 negotiations that their intent was to make "a simple adjustment to the royalty calculation" that would "remove the administrative burden of the [2011] royalty calculation without changing the essence of the agreement," Dkt. 30, at 1, an adjustment that would "convert the royalty/licensee fees to a per unit number," Dkt. 109-7, at 1. But the court cannot turn to extrinsic evidence unless the contract itself is ambiguous—that is, if the contract's language allows for multiple constructions about which reasonable people could honestly disagree. *Keipp v. Keipp*, 385 S.W.3d 470, 474 (Mo. Ct. App. 2012). Section 3.8 cannot be reasonably read as an agreement to adjust the royalty each year in any specific way, much less by an amount that would match the 2011 formula. T&M cannot rely on extrinsic evidence to support its proposed interpretation.

Even if the court were to consider extrinsic evidence, it does not support T&M's proposed interpretation of section 3.8. BlueScope's stated intention in renegotiating the royalty was to avoid the administrative burden posed by the 2011 formula. T&M's interpretation would require BlueScope to calculate the royalty that it would have paid under the 2011 formula, compare it to the 2013 agreement's unit royalty, and then adjust the royalty accordingly. This would obligate BlueScope to perform all the calculations required under the 2011 formula, and it would achieve no simplification of the royalty calculation.

Nor does T&M's proffered interpretation make equitable sense. For example, during the term of the license, BlueScope improved its skylights in several ways that increased cost. Why, if those improvements were not an aspect of T&M's technology, should that cost increase result in higher royalty revenue for T&M?

Nothing in the contract itself or in the extrinsic evidence suggests that the parties intended to lock BlueScope into annual royalty increases based on the 2011 formula. Because the court concludes that section 3.8 is unenforceable, it need not consider whether BlueScope breached it.

## CONCLUSION

T&M is bound by the deal it struck in the amended license, which required BlueScope only to discuss the possibility of a royalty adjustment each year, not to actually adjust the royalty by some specific formula. And even if BlueScope had refused to engage in those discussions, the contract provides no method by which the court could reasonably determine T&M's damages. Without such a method, section 3.8 is an unenforceable illusory promise. The court will grant BlueScope's motion for summary judgment.

ORDER

IT IS ORDERED that:

1. Defendant BlueScope Buildings North America, Inc.'s motion for summary judgment, Dkt. 50, is GRANTED. The clerk of court is directed to enter judgment on behalf of defendant and close this case.

2. BlueScope's motions to strike, Dkt. 75 and Dkt. 89, are DENIED as moot.

Entered July 24, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge